UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROY A. DAY,

    Plaintiff,

v.

Case No. 19-11311
HON. DENISE PAGE HOOD

GENERAL MOTORS COMPANY
and MARY T. BARRA,

    Defendants.
_____/

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS [ECF No. 16], DENYING AS MOOT
DEFENDANTS' MOTION TO CHANGE VENUE [ECF No. 17],
and DISMISSING PLAINTIFF'S CAUSE OF ACTION**

**I.    INTRODUCTION**

*Pro se* Plaintiff filed the instant cause of action on May 6, 2019, and filed an amended complaint on May 29, 2019 (the "Amended Complaint"). Defendants filed a Motion to Dismiss [ECF No. 16] and a Motion to Change Venue [ECF No. 17] on September 13, 2019. The motions have been fully briefed, and the Court also is in receipt of a letter from Plaintiff filed on November 7, 2019. [ECF Nos. 23, 25-29] The Court, having concluded that the decision process would not be significantly aided by oral argument, previously ordered that the motion be resolved on the motion and briefs submitted by the parties. E.D. Mich. L.R. 7.1(f)(2). For the reasons set forth

below, Defendants' Motion to Dismiss is granted, Defendants' Motion to Change Venue is denied as moot, Plaintiff's cause of action is dismissed.[1]

## II. BACKGROUND

Plaintiff, a Florida resident, brought this three-count action against Defendant General Motors Company, a Michigan corporation ("GM"), and Defendant Mary T. Barra, a Michigan resident and the Chief Executive Officer of GM ("Barra" or "MTB"). The action stems from Plaintiff's purchase of a General Motors Chevrolet Spark 1LT ("Spark" or "S") from Castriota Chevrolet (the "Dealership" of "CC") in Hudson, Florida. ECF No. 8, PgID 56 (¶6). On May 19, 2016, Plaintiff executed a contract with the Dealership for purchase of the Spark and a loan agreement with GM Financial (a GM subsidiary). *Id.* The Spark came with a bumper-to-bumper 36,000 mile/3-year warranty.

Plaintiff alleges that he had a number of issues with the Spark, as follows:

---

[1] In their reply brief, Defendants note that Plaintiff's litigation history and conduct in the State of Florida resulted in sanctions and conditions to filing any future complaints. *See* ECF No. 28, PgID 341-43. On July 24, 2019, Plaintiff was barred "from filing additional complaints in the Eastern District of Michigan without leave of the Court." *Day v. OnStar, LLC*, 2019 U.S. Dist. LEXIS 123136 (E.D. Mich. 2019) (No. 19-10922, at ECF No. 24, 27). As the instant action was filed prior to the issuance of the order in *OnStar*, Plaintiff was not required to seek leave to file this action. Accordingly, the Court concludes that Plaintiff's action does not need to be dismissed on the grounds that he failed to seek leave of the Court and turns to Defendants' Motion to Dismiss.

2

The mileage on the "S" on February 19, 2017 was 12,317 miles. On February 28, 2017 the "S" had a **Left HighBeam** fail (**First Time**), and was replaced under warranty. On September 13, 2017, Plaintiff delivered a letter to Ms. Cathy Davidson at "CC" in Hudson, Florida on the "S" HighBeam issue, and the probability that an "electrical system" issue exist for the "S" (See Exhibit "500" attached hereto and by reference incorporated herein). On October 5, 2017, with 26,435 miles, the "S" had a **Right Highbeam** fail (**First Time**), and was replaced under warranty. On January 4, 2018, the "S" had a Battery Failure, and Plaintiff received a Jump Start with GM Roadside Assistance after Plaintiff telephoned Defendant "GM's" Road-Side Assistance. The "S" on January 19, 2018 had 33,856. On May 19, 2018, the "S" had a mileage of 42,364. **CAVEAT**: Pursuant to contract law, under a "**cunning, misleading, and deceptive**" interpretation, and a "**planned obsolescence scam**" interpretation, an individual would "**cunningly, misleading, and deceptively**," state the "S" was now "out-of-warranty" pertaining to the "paper-legal-defined-warranty," when in fact, based on the **facts** in the instant case, Plaintiff's vehicle warranty for the "S" was still **valid, and full and complete**. On June 29, 2018 the "S" had another Dead Battery, and Plaintiff received a Jump Start from GEICO RoadSide Assistance. The mileage on June 19, 2018 was 44,456 miles. With 45,000 miles on July 3, 2018, Plaintiff had another battery failure, and the "Cruise Control" failed (no longer functional in the "set" mode). In addition, on July 3, 2018, the "Traction Control/Electronic Stability Control" failed (no longer functional in the "set" mode) with the "icon constantly appearing in the information display. Subsequently, on July 3, 2018, Plaintiff purchased a new battery from Advance Auto Parts (Battery Gold ATOCF – EA 11348065 H4). With the "W36" reflecting a "**cunning, misleading, and deceptive paper-expiration**," even though Plaintiff had documented the deficient HighBeam issue as associated with a deficient electrical system issue on the "S, (see Exhibit "500" attached hereto), Plaintiff made an appearance at "CC" in Hudson, Florida requesting service under the warranty for the aforesaid Cruise Control issue, and Traction Control issue, and the HighBeam issue, and the electrical system issue, but was denied service under the "**cunning, misleading, and deceptive**" paper-expiration-warranty, and was informed that the diagnostic check would be $148.00. **Plaintiff refused**,

> since Plaintiff contends that since Plaintiff documented the **HighBeam** <u>issue, as associated with the electrical system on the "S"</u> (see Exhibit "500" attached hereto) <u>that Plaintiff was still under the "W36."</u> **Defendants are using "W36's" disclaimers on warranties in an unfair or misleading manner!** On July 19, 2018, the "S" had 46,498 miles. On July 23, 2018, the **Left HighBeam** failed a "**Second Time**" with a NEW BATTERY (since the electrical system, and/or HighBeams, were deficient on the "S," Plaintiff expected the **HighBeam** to fail again, when in fact, the **Highbeam** did fail again, and will continue to fail). Accordingly, as Plaintiff surmised in the letter (See Exhibit "500" attached hereto) to Ms. Davidson (See Exhibit "500" attached hereto) pertaining to the electrical system and the **HighBeam issue**, Plaintiff was correct, specifically, the "S" had a deficient electrical system, and/or the **HighBeam** replacement was a "planned-obsolescence" "scam" to force and coerce a "**cunning, misleading, deceptive**" maintenance schedule.

ECF No. 8, PgID 56-57 (¶6) (emphasis in original). Plaintiff alleges that he was forced to file this action because:

> To ensure the record was clear and certain and full and satisfactory, Plaintiff sent a letter to Defendant "MTB" documenting the "**cunning, misleading, and deceptive**" warranty (See Exhibit "501" attached hereto and by reference incorporated herein). Plaintiff received no response to the aforesaid Exhibit "501" so Plaintiff sent a second letter to Defendant "MTB" (See Exhibit "502" attached hereto and by reference incorporated herein). Plaintiff received an email response that indicating to contact Defendants via a telephone conversation, but Plaintiff was not duped. Plaintiff sent a reply email indicating all correspondence must in writing via an email response (See Exhibit "503" attached hereto and by reference incorporated herein) (See Exhibit "504" attached hereto and by reference incorporated herein).

ECF No. 8, PgID 58 (¶7) (emphasis in original).

Count One of Plaintiff's Amended Complaint is for breach of contract, Count

Two is for fraud, and Count Three is for negligence. As to GM, Plaintiff alleges that:

> [GM] is an automobile manufacturing parent-holding company with various affiliates, subsidiaries, agents, servants, and co-conspirators, including but not limited to, Castriota Chevrolet (hereafter, "CC") in Hudson, Florida. Defendant "GM" is engaged in the business of manufacturing vehicles in the various States across the United States, and the various Nations on Planet Earth. At all times pertinent to this Complaint, and at all times mentioned, Defendant "GM" was acting through its principal agents, and servants, including but not limited to, Castriota Chevrolet in Hudson, Florida, and Defendant Mary T. Barra, and various agents, and servants, and co-conspirators, and employees, of Defendant "GM," including but not limited to, various subsidiaries and affiliates of Defendant "GM," whose names are not known to Plaintiff at this stage of litigation. Defendant "GM" was acting individually and in concert, with each and all agents and servants and co-conspirators and employees, including but not limited to, Defendant Mary T. Barra, and "CC" in Hudson, Florida. <u>CAVEAT</u>: For the purpose of the instant complaint, Defendant "GM" refers, relates, pertains and mentions each and all subsidiaries and affiliates, and agents, and servants, and co-conspirators, and employees, whose names are not know to Plaintiff at this stage of litigation.

ECF No. 8, PgID 54-55 (¶2) (emphasis in original). Plaintiff makes the following allegations about Barra:

> Defendant is Mary T. Barra, Chairman and President and Chief Executive Officer (hereafter, Defendant "MTB") of Defendant "GM." At all times pertinent to this Complaint, Defendant "MTB," was employed by Defendant "GM" as the Chairman and Chief Executive Officer, with her legal residence and domicile in the State of Michigan. **In doing the acts and things hereinafter set forth, Defendant "MTB" was acting individually and in concert with "CC"** in Hudson, Florida, and its various subsidiaries and affiliates, and agents, and servants, and co-conspirators, and employees, **in Defendant "MTB's" capacity as Chairman and Chief Executive Officer of Defendant "GM." Each and all acts of Defendant "MTB" set forth herein were done by**

5

> **Defendant "MTB," acting individually and in concert under pretense and by virtue of, and under the authority of, Defendant "MTB's" office as Chairman and Chief Executive Officer of Defendant "GM**," and its various subsidiaries and affiliates, and agents, and servants, and co-conspirators, and employees, and its various subsidiaries and affiliates, and agents, and servants, and co-conspirators, and employees.

ECF No. 8, PgID 55 (¶3) (emphasis added). Plaintiff also alleges that he sent Barra two letters, but Barra never responded to either of them. ECF No. 8, PgID 58 (¶7).

## III. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).

IV. **ANALYSIS**

Pro se litigants are held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), but the leniency granted to pro se litigants is not boundless. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). All litigants must conduct a reasonable inquiry before filing any pleadings. Fed. R. Civ. P. 11(b). As discussed below, it does not appear that Plaintiff conducted a reasonable inquiry before filing this action. This may best be reflected in the following statement in his response brief, which echoes Paragraph 2 of his Amended Complaint (set forth above): "Plaintiff's Complaint does not state that Defendant GM perpetrated a fraud or negligence or breach of contract against Plaintiff, but agents, servants, co-conspirators, and employees of Defendant GM . . . For the record: Defendant GM did not perpetrate the fraud and negligence against Plaintiff, but agents, servants, co-conspirators, and employees!" ECF No. 26, PgID 324-25.

A. **Count One - Breach of Contract**

A plaintiff must establish the following to state a breach of contract claim under Florida law: (1) a valid contract; (2) a material breach; and (3) damages. *See Abruzzo*

v. *Haller*, 603 So.2d 1338, 1340 (Fla. 1st DCA 1992).² With respect to Plaintiff's breach of contract claim in Count One, Plaintiff alleges that, in connection with the purchase of the Spark, he entered into contracts with the Dealership and GM Financial. Neither the Dealership nor GM Financial is a party to this action. Plaintiff does not allege that GM or Barra was a party to any contract he executed regarding the Spark. Because not valid contract between Plaintiff and GM or Barra has been alleged, the Court dismisses Plaintiff's breach of contract claim against GM and Barra (Count One).

**B.     Count Two - Fraud**

As to Plaintiff's fraud claim in Count Two, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted. Under Florida law, "[a] fraud claim lies for: (1) misrepresentation of material fact; (2) by someone who knew or should have known of the statement's falsity; (3) with intent that the representation would induce another to rely and act on it; and (4) injury suffered in justifiable reliance on the representation." *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1231,

---

²Under Michigan law, the element of a breach of contract claim are: (1) the parties entered into a valid enforceable contract that included the terms and conditions claimed by plaintiff; (2) the defendant breached the contract; and (3) the defendant's breach caused a loss to the plaintiff. *See, e.g., Platsis v. E.F. Hutton & Co.*, 642 F.Supp. 1277 (W.D. Mich. 1986); *Pittsburgh Tube Co. v. Tri-Bend, Inc.*, 185 Mich. App. 581 (1990).

8

1237 (S.D. Fla. 2011) (citation omitted).[3] The pleading requirements for fraud claims are governed by Rule 9(b) of the Federal Rules of Civil Procedure. A Middle District of Florida court recently recognized:

> Rule 9(b) may be satisfied if the complaint sets forth:
>
> (1) [P]recisely what statements were made in what documents or oral representations or what omissions were made, and
>
> (2) [T]he time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, and
>
> (3) [T]he content of such statements and the manner in which they misled the plaintiff, and
>
> (4) [W]hat the defendants obtained as a consequence of the fraud.
>
> *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997).

---

[3]Similarly, under Michigan law, a fraudulent misrepresentation claim requires that a plaintiff plead facts plausibly showing:

(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*Bergen v. Baker*, 264 Mich. App. 376, 382 (2004) (internal citations omitted); *Lawrence M. Clarke, Inc. v. Richco Constr., Inc.*, 489 Mich. 265, 283-84 (2011).

*Linville v. Ginn Real Estate Co.*, LLC, 697 F.Supp.2d 1302, 1306 (M.D. Fla. 2010).

As the Sixth Circuit has stated:

> Because claims based on fraud pose "a high risk of abusive litigation," *Twombly*, 550 U.S. at 569 n.14, a party making such allegations "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This rule requires a plaintiff: (1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent. *Ind. State Dist. Council of Laborers and HOD Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009).

*Republic Bank & Trust Co v Bear Stearns & Co*, 683 F3d 239, 247 (6th Cir. 2012).

In this case, Plaintiff has not adequately pleaded a fraud claim against GM or Barra. First, Plaintiff does not make allegations that GM or Barra made <u>any</u> representation to Plaintiff; in fact, with respect to Barra, Plaintiff actually states that Barra "refused and continued to refuse to address [the issues raised by Plaintiff in his two letters to her] . . ." ECF No. 26, PgID 308. And, as Plaintiff's response states, "GM did not perpetrate the fraud . . . against Plaintiff[.]" ECF No. 26, PgID 324-25. Second, even if the Court were to construe Plaintiff's allegations of material representations to have been made by GM or Barra, Plaintiff's conclusory allegations that Defendants acted "cunningly, deceptively, and misleadlingy" do not satisfy the heightened pleading requirements for Rule 9(b). In this case, Plaintiff does not, at a minimum, specify who the speaker was, what the allegedly fraudulent statements

were, or when and where the statements were made.

For the reasons set forth above, Plaintiff's fraud claim (Count Two) against GM and Barra must be dismissed.

## C.     Count Three - Negligence

"Under Florida law, a plaintiff must prove four elements to prevail on a negligence claim: (1) the defendant owes a legal duty to the plaintiff: (2) the defendant breached that duty: (3) defendant's breach legally caused an injury to plaintiff; and (4) damages resulted from the injury." *Janis v. Pratt & Whitney Canada, Inc.*, 370 F. Supp. 2d 1226, 1229 (M.D. Fla. 2005) (citations omitted).[4] The Court finds that Plaintiff has not adequately pleaded a claim of negligence against GM or Barra.[5]

---

[4]Under Michigan law, a negligence claim requires that Plaintiffs show: "(1) that the defendant owed a duty to plaintiff, (2) that the defendant breached the duty, (3) that the defendant's breach of duty caused the plaintiff's injury, and (4) that the plaintiff suffered injuries." *Lelito v. Monroe*, 273 Mich.App. 416, 418-19 (2006).

[5]In his allegations of negligence, Plaintiff states that:

 21.  At all times mentioned, and for some time prior, Defendants, and Defendants' agents, or servants, or employees, or co-conspirators, had, or in the exercise of due care should have had, full and complete knowledge as well trained "automotive-manufacturing-experts," that a "duty was imposed" upon them to manufacture a vehicle that did not have a deficient electrical system, . . . and not to engage in a cover-up and a concealment of the course of **cunning, deceptive and misleading** conduct against Plaintiff by denying Plaintiff the proper repairs under the "W36." In addition, Defendants, and Defendants' agents, or servants, or

11

First, as noted in the introduction of Section IV, Plaintiff acknowledges that "GM did not perpetrate the . . . negligence against Plaintiff[.]" ECF No. 26, PgID 324-25. Second, Barra is entitled to dismissal of the negligence claim because Plaintiff fails to allege that Barra did anything other than serve as Chairman and Chief Executive Officer of Defendant. Plaintiff does not allege any specific act, conduct, or omission to act by Barra, except to allege that Barra did not respond to two letters he sent to her. Plaintiff has not identified – nor is the Court aware of – a legal duty to respond to letters from a consumer.

Accordingly, Plaintiff's negligence claim (Count Three) against GM and Barra

---

co-conspirators, or employees, had a duty imposed upon them "to take action" to immediately engage in a honest, ethical, true, correct, and proper, procedures to correct each and all courses of **cunning, misleading and deceptive** conduct pertaining to the deficient electrical system on Plaintiff's "S[park]."

22. At all times mentioned, and for some time prior, Defendants, and Defendants' agents, or servants, or employees, or co-conspirators, had, or in the exercise of due care should have had, full and complete knowledge as well trained "automotive-manufacturing-experts," that a "duty was imposed" upon them to take "immediate action" to honestly, ethically, truly, correctly and properly correct each and all courses of **cunning, misleading and deceptive conduct** pertaining to the deficient electrical system on Plaintiff's "S[park]," and not to engage in a <u>cover-up</u> and a <u>concealment</u> of the course of cunning, misleading and deceptive conduct against Plaintiff pertaining to "W36."

ECF No. 8, PgID 63 (¶21) (emphasis in original).

is dismissed.

**D.     Motion to Change Venue**

As the Court has determined that Plaintiff's cause of action must be dismissed, the Court need not decide Defendants' Motion to Change Venue. The Motion to Change Venue is denied as moot.

**V.     CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion to Dismiss [ECF No. 16] is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Change Venue [ECF No. 17] is DENIED AS MOOT.

IT IS FURTHER ORDERED that this case is DISMISSED. Judgment shall be entered accordingly.

IT IS ORDERED.

Dated: November 20, 2019

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE